UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.10-80561-Civ-Hurley/Hopkins

THE LEARNING EXPERIENCE
SYSTEMS, LLC,
TLE AT FOXBOROUGH, LLC, and
TLE AT MILFORD, LLC,

        Plaintiffs,

vs.

FOXBOROUGH CHILD CARE, LLC,
MILFORD CHILD CARE, LLC, and
SATISH MEHTA,

        Defendants.
_____/

## OMNIBUS REPORT AND RECOMMENDATION AS TO PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION AND DEFENDANTS' CROSS MOTION FOR PRELIMINARY INJUNCTION  (DEs 8, 36)

**THIS CAUSE** has come before this Court upon Orders Referring Plaintiff's Amended

Motion for Preliminary Injunction and Defendants' Cross Motion for Preliminary Injunction to

the undersigned United States Magistrate Judge for a Report and Recommendation.  (DEs 8, 12,

36, 42).  Both Plaintiff's Amended Motion and Defendants' Cross Motion are fully briefed.

(DEs 8, 24, 25, 26, 36, 37, 38, 40, 44, 50, 52, 55).  On July 20, 2010, this Court conducted an

evidentiary hearing, and the matter is now ripe for review.  For the reasons that follow, this Court

**RECOMMENDS** that the District Court **DENY** Plaintiff's Amended Motion for Preliminary

Injunction, and **DENY** Defendants's Cross Motion.  (DEs 8, 36).

## BACKGROUND AND EVIDENTIARY HEARING

Each of the named Plaintiffs, The Learning Experience Systems, TLE Foxborough, and

TLE Milford (collectively referred to as "Plaintiff") are limited liability companies based in Boca Raton, Florida.  (DE 7, pgs. 1-2; DE 8, pg. 2; DE 9, ¶ 4).  According to an affidavit executed by Richard S. Weissman ("Weissman"), the President/Manager of Plaintiff, Plaintiff is a franchisor of childcare and development centers under the registered mark, The Learning Experience System.  (DE 9, ¶ 1).  Defendants Foxborough Child Care LLC ("Foxborough Child Care") and Milford Child Care LLC ("Milford Child Care") are Massachusetts Limited Liability Companies which are based in Massachusetts.  (DE 9, ¶¶ 13, 20, 22).  Defendant Satish Mehta ("Mehta") is purportedly a resident of New Jersey, and was, until recently, the sole owner and operator of Foxborough Child Care and Milford Child Care.  (DE 7, pgs. 2-3).[1]  Both Defendant child care centers operate in Massachusetts.  (DE 8, pg. 2; DE 9, ¶¶ 13, 20, 22 and exhs. 1, 5).

On or about September 13, 2005, and May 31, 2005, Plaintiff executed franchise agreements with Defendants Foxborough Child Care and Milford Child Care, pursuant to which Mehta personally guaranteed payments for and the performance of the child care centers.  (DE 7, pgs. 4, 5; DE 9, ¶ ¶ 11-21 and exhs. 1, 5).  Mehta commenced operation of the child care centers in November and December of 2008.  (DE 7, pgs. 5, 6; DE 8, pgs. 2-3; DE 9, ¶ ¶ 17, 26).

In December of 2009, both Defendant child care centers began experiencing financial difficulties.  (DE 7, pg. 6; DE 8, pg. 3; DE 9, ¶ 27).  The Foxborough Child Care center thereafter defaulted on rental payments due under the property lease, prompting Plaintiff to send a notice of default to Mehta and Foxborough Child Care on April 2, 2010.  (DE 7, pg. 7; DE 8, pg. 3; DE 9,

---

[1]  On May 25, 2010, upon a suggestion of bankruptcy having been filed as to Defendant Mehta, the District Court entered a stay of proceedings as to Mehta only.  (DEs 5, 6).

¶ 29 and exh. 7).[2]  According to Weissman's affidavit, in addition to defaulting on their leases, Defendants also defaulted on their franchise agreements in the following respects: (1) Foxborough Child Care's health insurance lapsed on April 16, 2010; (2) Foxborough Child Care failed to cover payroll expenses on April 20, 2010; and, (3) Milford Child Care failed to cover its payroll expenses on May 11, 2010.  (DE 8, pgs. 3, 7; DE 9, ¶ 32).  As a result, on April 30 and May 11, 2010, Plaintiff terminated the franchise agreements of Foxborough Child Care and Milford Child Care,[3] and demanded that each Defendant Child Care center surrender possession of their leased premises to Plaintiff.  (DE 7, pg 7; DE 8, pgs. 3-4; DE 9, ¶ ¶ 36, 37 and exh. 12).

On May 4, 2010, Plaintiff commenced the instant action, alleging causes of action for, *inter alia*, breach of contract, specific performance, and trademark infringement.  (DE 7, pgs. 1-19).  Plaintiff's Amended Motion for Preliminary Injunction followed on May 27, 2010.  (DE 8).

In response to the motion, Defendant notes that on April 30, 2010, Plaintiff served Foxborough LLC with a letter indicating that the Foxborough Child Care franchise agreement was being terminated immediately.  (DE 24, pg. 10).  Plaintiff then had the locks changed so that Defendant Mehta could not enter the child care center, shut down Mehta's access to his franchise e-mail account, and commenced operations of the child care center without the participation of Mehta or Foxborough LLC.  (DE 24, pg. 10; DE 26, ¶ 43).  On May 1, 2010, Plaintiff sent Foxborough Child Care a letter, indicating that Foxborough's possession of the leased premises

---

[2]  According to the Weissman affidavit, the default under the Foxborough Child Care Franchise Agreement also constituted a default under the Milford Franchise Agreement.  (DE 9, pg. 6; exh. 5, ¶ 11.2.1(d)).  The notice of default dated April 2, 2010, indicates that Foxborough Child Care was over one hundred twenty-five thousand dollars ($125,000.00) in arrears in rental payments.  (DE 9, exh. 7).

[3]  Plaintiff terminated the franchise agreement with Foxborough Child Care on April 30, 2010, and thereafter terminated the franchise agreement with Milford Child Care on May 11, 2010.  (DE 9, exh. 12).

was being terminated as of May 13, 2010.  (DE 24, pg. 10).  Thereafter, on May 11, 2010, Plaintiff served Milford LLC with a letter terminating the Milford franchise agreement immediately.  (DE 24, pg. 11; DE 26, ¶ 45).  Defendant also asserts that Plaintiff then changed the locks of the Milford Child Care center so that Mehta could not enter the premises, shut down Mehta's access to his franchise e-mail account, and commenced operations without the participation of Mehta or Milford LLC.  (DE 24, pg. 11; DE 26, ¶45).

Defendants argue that Plaintiff's Amended Motion should be denied because (1) Plaintiff has already obtained the relief sought through its own self-help eviction of Defendants from the premises and takeover of the operation of the child care centers; (2) Plaintiff is unable to show a likelihood of success on the merits because Plaintiff has not properly terminated the franchise agreements; (3) Defendants have not used Plaintiff's marks subsequent to receipt of the letters purportedly terminating the franchise agreements; (4) Plaintiff is unable to show irreparable harm as a result of its wrongful eviction of Defendants from the premises; (5) any harm to Plaintiff is outweighed by the harm to Defendants Foxborough Child Care and Milford Child Care; and, (6) the public interest would not be served by granting Plaintiff's motion because Plaintiff improperly terminated the franchise agreements and evicted Defendants without due process of law.  (DE 24, pgs. 1-20).

In addition to opposing Plaintiff's Amended Motion, Defendants also filed their own Cross Motion for Preliminary Injunction, seeking: (1) a return of the operation of the child care centers to Foxborough LLC and Milford LLC; and, (2) an order (a) enjoining Plaintiff from withholding the franchises' income; (b) enjoining Plaintiff from depositing into Plaintiff's bank account checks made payable to Foxborough LLC and Milford LLC; (c) enjoining Plaintiff from

making false representations regarding the termination of the franchises; (d) enjoining Plaintiff from interfering with the relationships that the LLCs enjoy with its employees and customers; and, (e) declaring the termination of the franchise agreements void and of no effect.  (DE 36, pgs. 1-2).

This Court conducted an evidentiary hearing on July 20, 2010.  At the evidentiary hearing, Plaintiff argued*, inter alia*, that Defendant was aware from the start that if he encountered financial difficulties, he could possibly lose the franchises.  Plaintiff also argued that after it terminated the Foxborough franchise agreement on April 30, 2010, Plaintiff did not immediately eject Defendant from the facility.  Rather, Plaintiff stated that as of April 30, 2010, Defendant never returned, and in fact abandoned operation of the facility.  As a result, Plaintiff asked the facility employees to remain in their capacities, reassured them that payroll and medical benefits would be paid, and, in the days following April 30, Plaintiff changed the locks to the facility.  Plaintiff commenced operating the facility on May 4, 2010.

In addition, although Plaintiff argued that it had established all prongs required for the entry of a preliminary injunction, Plaintiff conceded that Defendant has not actually used Plaintiff's mark since the franchise agreements were terminated.

Defendant argued, *inter alia*, that the case centered on cost issues, including payroll, health insurance, and rental payments for the lease of the premises.  Similar to Plaintiff, Defendant also presented arguments as to whether or not the franchise agreements were properly terminated, and admitted that since Plaintiff terminated the franchise agreements and commenced operation of the child care centers, he had not used Plaintiff's mark.

After defense counsel concluded by arguing that all four (4) prongs required for the entry

of a preliminary injunction had been met, Defendant Mehta was called as a witness.  In his testimony, Mehta stated, *inter alia*, that if he were restored to possession and operation of the child care centers, he would be able to keep the centers afloat financially by infusing both the Foxborough and Milford child care centers with cash that he has been earning as a private financial consultant.  He also stated that although both child care centers experienced financial difficulties due to the fact that they were start up businesses, the Milford Child Care center was faring better than Foxborough.  Nevertheless, Mehta maintained that both child care centers were "close" to breaking even or turning a profit, and that he should therefore be restored to possession and operation of the centers.

In response to Mehta's testimony, Plaintiff called as witnesses Weissman and Patrick Campolo ("Campolo").  Weissman testified, *inter alia*, that after Plaintiff received complaints that Mehta was failing to make rental payments for the Foxborough facility, and that Mehta failed to make payments for health insurance coverage and payroll for the employees at Foxborough, Plaintiff began sending its own employees to the Foxborough center to assist Mehta.  Nevertheless, because Weissman was not able to resolve the issues with Mehta, and because Mehta abandoned the Foxborough center and refused to even address the Foxborough payroll lapses, Weissman testified that Plaintiff had no choice but to terminate the franchise agreements and assume operations of the Foxborough center itself to protect the goodwill of the mark.

In his testimony, Campolo, who serves as Plaintiff's Vice President of Corporate Operations, testified that Defendant failed to make payroll payments for both the Foxborough and the Milford Child Care centers, on April 29 and May 11, 2010, respectively.

## DISCUSSION

### I.  Plaintiff's Amended Motion for Preliminary Injunction (DE 8)

Plaintiff seeks a preliminary injunction to prevent Defendants Foxborough Child Care and Milford Child Care from the continued operation of the terminated franchises and use of Plaintiff's registered trademarks.  (DE 8, pg. 2).  Plaintiff contends that unless an injunction is entered, Plaintiff will suffer from irreparable harm to its franchise business, goodwill, and marks, and that such harm cannot be remedied solely by money damages.  (DE 8, pg. 2).

As the party seeking a preliminary injunction, Plaintiff bears the burden of establishing four elements: (1) that there is a substantial likelihood of success on the merits; (2) that Plaintiff will be irreparably harmed if injunctive relief is denied; (3) that the threatened injury outweighs whatever damage the injunction may cause to the alleged infringer; and, (4) that the injunction, if issued, will not be adverse to the public interest.  *See Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (*citing Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001)); *CBS Broadcasting Inc. v. EchoStar Commun. Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001) (*citing Siegel v. LePore*, 234 F.3d 1163, 1175 (11th Cir. 2000) (*en banc*)).  It is well established that "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to all four elements."  *Siegel*, 234 F.3d at 1176. Generally, the first element is the most important because granting a temporary restraining order or motion for preliminary injunction would be inequitable if the movant has no chance of success on the merits.  *See Butler v. Alabama Judicial Inquiry Comm'n*, 111 F. Supp 2d 1224, 1229-1230 (M.D. Fla. 2000) (*citing Canal Auth. of State of Fla. v. Callaway,* 489 F.2d 567, 572 (5th Cir.

1974);[4] *Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901, *1 (11th Cir. April 19, 2000)). "If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1247 (11th Cir. 2002) (*citing Pittman v. Cole,* 267 F.3d 1269 (11th Cir. 2001).

"Trademark actions 'are common venues for the issuance of preliminary injunctions." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (*quoting Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1219 (N.D. Ga. 1995)). The goal of a preliminary injunction is to prevent irreparable harm in order to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974). "[T]he most compelling reason in favor of [granting a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." *Id.* at 573.

**1.  Substantial Likelihood of Success on the Merits**

Plaintiff contends that it has established a substantial likelihood of success on the merits with respect to its claims for breach of contract, specific performance, and trademark infringement because (1) Plaintiff properly terminated the franchise agreements based on Defendants' various acts of default; and, (2) Defendants' post-termination use of the registered marks constitutes willful trademark infringement, in violation of 15 U.S.C. § 1114.  (DE 8, pgs. 6, 4-10).

---

[4]  Decisions of the former Fifth Circuit rendered prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

## Claim 1:  Breach of Contract

A review of Plaintiff's Amended Motion for Preliminary Injunction shows that although Plaintiff has provided a detailed factual discussion with regard to its breach of contract claims, it has nevertheless failed to offer any legal argument in support of its motion for preliminary injunction on its claim for breach of contract.  (DE 8, pgs. 1-10).  Although Plaintiff recites the four (4) elements which must be proven for the entry of a preliminary injunction under Rule 65, Plaintiff failed to discuss the elements for a claim of breach of contract, failed to show how Plaintiff has met such elements, and failed to discuss how Defendants' purported breach of contract entitles Plaintiff to injunctive relief herein.[5]

In light of Plaintiff's failure to offer any legal argument in support of its claim for breach of contract, this Court concludes that Plaintiff has failed to show a substantial likelihood of success on the merits with regard to such claim.  Because Plaintiff has therefore failed to clearly establish the "'burden of persuasion' as to all four elements," *Siegel*, 234 F.3d at 1176, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's Amended Motion for Preliminary Injunction as to Plaintiff's claims for breach of contract.  (DE 8).

## Claim 2:  Specific Performance

Just as with its claim for breach of contract, Plaintiff has offered no legal argument in support of its motion for preliminary injunction on the specific performance claims.  As such, this Court is likewise unable to conclude that Plaintiff has " . . . clearly established the 'burden of

---

[5]  An award of damages is the most common remedy for a breach of contract.  *See Mobil Oil Exploration and Producing Southeast, Inc. v. United States*, 530 U.S. 604, 629 (2000) (noting the damages are the usual remedy for breach of contract); *United States v. Winstar Corp.*, 518 U.S. 839, 886 n. 30 (1996) (noting that damages are the default remedy for breach of contract).  Although injunctive relief may be ordered under certain circumstances, *see Barnes v. Gorman*, 536 U.S. 181, 187-188 (2002) (*citing* Restatement (Second) of Contracts § 357 (1981)), Plaintiff offers no discussion in that regard.

persuasion' as to all four elements" required for the entry of a preliminary injunction. *Siegel*, 234

F.3d at 1176. Therefore, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's

Amended Motion for Preliminary Injunction as to Plaintiff's claims for specific performance.

(DE 8).

### Claim 3:  Trademark Infringement

The section upon which Plaintiff relies provides in relevant part,

§ 1114. Remedies; infringement; innocent infringement by printers and publishers

(1) Any person who shall, without the consent of the registrant–

(a) **use** in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

\*\*\*\*

15 U.S.C. §1114 (2009) (*emphasis added*).

For trademark infringement claims, civil liability only attaches where a person uses

another's trademark in a manner that is likely to cause confusion, mistake, or to deceive, and

where such use is without consent of the trademark owner.  *See Nitro Leisure Products, L.L.C. v. Acushnet Co.*, 341 F.3d 1356,1361 (Fed. Cir. 2003).  The Eleventh Circuit has stated that " . . . in order to prevail on a trademark infringement claim, a plaintiff must show that its mark was used in commerce by the defendant without the registrant's consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake." *Robertson*, 147 F.3d at 1307 (*citing* 15 U.S.C. § 1114(1)(a), *as cited in Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983)), *cert. denied*, 465 U.S. 1102 (1984).

To prevail on its trademark infringement claim against Defendants Foxborough and Milford Child Care, Plaintiff, as franchisor, would ordinarily be required to make "some type of showing" that Plaintiff properly terminated the franchise agreements, thereby resulting in unauthorized use of the trademark by the former franchisees.  *See Robertson*, 147 F.3d at 1308 (concluding that the district court properly required McDonald's to make a showing that it properly terminated the franchise agreement in order to prevail on its claim for trademark infringement).

However, notwithstanding the parties contentions as to whether the franchise agreements were properly terminated, (DE 8, pgs. 4-6; DE 24, pgs. 12-18; DE 36, pgs. 2-10), this Court need not address such issue because the evidence contained in the record shows that Plaintiff's claim of trademark infringement fails in a key respect: Plaintiff has failed to show that Defendants have used Plaintiff's marks subsequent to the termination of the franchise agreements.

Several courts have noted that actual use of a protected mark is a prerequisite to a Lanham Act violation.  *See Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002) (noting that claims of trademark infringement would fail unless defendants used the mark in a prohibited manner);

11

*Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 625, 626 (6th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997) (finding that the district court abused its discretion when it entered permanent injunction against trademark infringement where plaintiff failed to show actual use of the mark); *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 (8th Cir. 2002) (noting that claims of trademark infringement and false designation of origin under the Lanham Act require actual use as a prerequisite to liability) (*citing Holiday Inns, Inc.*, 86 F.3d at 626); *Howard Johnson Int'l, Inc. v. Vraj Brig, LLC*, No. 08-1466, 2010 WL 215381, *6-*7 (D.N.J. Jan. 14, 2010) (noting that the Lanham Act only prohibits affirmative use of a protected mark; granting summary judgment against plaintiff because plaintiff failed to show that defendant used the marks within the meaning of the Lanham Act) (*citing Holiday Inns, Inc.*, 86 F.3d at 626); *AmMed Direct, LLC v. Liberty Medical Supply, Inc.*, No. 3:09-00288, 2009 WL 3680539, *5 (M.D. Tenn. Sept. 23, 2009) (noting that an essential element of proof for a Lanham Act violation is use of the mark or a deceptively similar copy of the mark) (*citing Holiday Inns, Inc.*, 86 F.3d at 626); *Nokota Horse Conservancy, Inc. v. Bernhardt*, 666 F. Supp. 2d 1073, 1078 (D.N.D. 2009) (noting that trademark infringement claims require use of the protected mark) (*citing Holiday Inns, Inc.*, 86 F.3d at 626; *DaimlerChrysler AG*, 315 F.3d at 936); *Ramada Worldwide, Inc. v. Shriji Krupa, LLC*, Civil Action No. 07-2726 (JAG), 2009 WL 1490577, *5 (D.N.J. May 27, 2009) (reserving ruling on motion for damages because the plaintiff failed to provide any evidence that the defendant's misuse of the marks continued after receipt of cease and desist letters; plaintiff only proffered that the defendant continued to use the marks after the cease and desist letters).

As to what level of use is required to sustain a trademark infringement claim, only a

minimal level of use need be proven.  *See Sweet Sixteen Co. v. Sweet "16" Shop, Inc.*, 15 F.2d

920, 925 (8th Cir. 1926) (stating, " . . . while there must . . . be some user in trade . . . the quantum

thereof need not be large" and noting that a single instance of use may be enough).  Nevertheless,

where use of the mark is negligible, a court may deny a motion for preliminary injunction

because there is "nothing to enjoin."  *See Merry Hull & Co. v. Hi-Line Co., Inc.*, 243 F. Supp. 45

(S.D.N.Y. 1965) (reasoning that the Defendant only used the mark in one instance in a pamphlet

of limited circulation that was not distributed to any customers, that the Defendant made no

claim to any public or extended use of the mark, and disavowed any allegation of real use in the

past and made no claim of a right to use in the future).  Nevertheless, because a preliminary

injunction is only to prevent on-going violations, where no use of a protected mark is shown, the

Lanham Act cannot be properly invoked.  *See Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th

Cir. 2003).

 Application of the foregoing leads this Court to conclude that Plaintiff has failed to show

a substantial likelihood of success on the merits as to its claim of trademark infringement.  As

noted by Defendants, and as acknowledged by Plaintiff at the evidentiary hearing, Defendants

have not used Plaintiff's mark since Plaintiff terminated the franchise agreements.  (DE 24, pgs.

12, 17, 19).  Although at the evidentiary hearing Plaintiff pointed to purported "lingering use" of

the mark by Defendants, such as Defendants' failure to disassociate themselves from Plaintiff's

mark in connection with unspecified bank accounts, such use does not appear to constitute use

under the Lanham Act because Plaintiff has not shown that Defendants have actually used

Plaintiff's mark in connection with the sale or advertisement of Plaintiff's services.  *See Bird*,

289 F.3d at 878 (finding that district court did not abuse its discretion in dismissing claims of

trademark infringement because the plaintiff failed to show that the defendants used the mark in connection with the sale, distribution, or advertising of goods or services); *Webfeats*, 319 F.3d at 772 (dissolving entry of preliminary injunction because the plaintiff failed to show a substantial likelihood of success on the merits; finding that the defendant's display of Plaintiff's mark on Defendant's website use was not in connection with the sale or advertising of goods or services, and that there was no likelihood of confusion among consumers); *Vraj Brig, LLC*, 2010 WL 215381 at *5-*7 (entering summary judgment against the plaintiff on its claims of trademark infringement and trademark dilution; finding that defendant's failure to take down billboard sign displaying plaintiff's mark did not violate the Lanham Act because the defendant did not affirmatively use the mark to create confusion, or in connection with an offer to provide goods or services).

In short, because the evidence shows that Defendant has not used Plaintiff's mark subsequent to the termination of the franchise agreements, Plaintiff's claim of trademark infringement fails.  In light of Plaintiff's failure to show a substantial likelihood of success on the merits with regard to its claim of trademark infringement, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's Amended Motion for Preliminary Injunction as to such claim. (DE 8).

*See Siegel*, 234 F.3d at 1176 (noting that a preliminary injunction should not be granted unless the movant clearly establishes the 'burden of persuasion' as to all four elements."); *Ramada Worldwide, Inc.*, 2009 WL 1490577 at *5 (declining to grant relief, and reserving ruling on motion for damages because the plaintiff failed to provide any evidence that the defendant's misuse of the marks continued after receipt of cease and desist letters; plaintiff only proffered

14

that the defendant continued to use the marks after the cease and desist letters).

Because Plaintiff has failed to make the required showing as to the likelihood of success on the merits with regard to any of its claims, this Court need not consider the remaining required elements required for the entry of a preliminary injunction. *See Johnson & Johnson Vision Care, Inc.*, 299 F.3d at 1247 (*citation omitted*).

## II.  Defendants' Cross Motion for Preliminary Injunction (DE 36)

As the movants in their Cross Motion For Preliminary Injunction, Defendants bear the burden of establishing the same four elements: (1) that there is a substantial likelihood of success on the merits; (2) that Plaintiff will be irreparably harmed if injunctive relief is denied; (3) that the threatened injury outweighs whatever damage the injunction may cause to the Plaintiff; and, (4) that the injunction, if issued, will not be adverse to the public interest. *See Palmer*, 287 F.3d at 1329 (*citations omitted*).  It is well established that "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to all four elements." *Siegel*, 234 F.3d at 1176.

As noted previously, in Defendants' Cross Motion, Defendants seek: (1) a return of the operation of the child care centers to Foxborough LLC and Milford LLC; and, (2) an order (a) enjoining Plaintiff from withholding the franchises' income; (b) enjoining Plaintiff from depositing into Plaintiff's bank account checks made payable to Foxborough LLC and Milford LLC; (c) enjoining Plaintiff from making false representations regarding the termination of the franchises; (d) enjoining Plaintiff from interfering with the relationships that the LLCs enjoy with its employees and customers; and, (e) declaring the termination of the franchise agreement void and of no effect.  (DE 36, pgs. 1-2).

**1.  Substantial Likelihood of Success on the Merits**

Although Defendants request that the Court restore Defendants to their former status as operators of the franchised child care centers, (DE 36, pgs. 2-15), and although they claim that there is a substantial likelihood that Defendants will prevail on the merits of their claims, Defendants fail to clearly identify the specific legal cause(s) of action for which they are seeking injunctive relief, and also fail to offer legal argument in support of several causes of action.  (DE 36, pgs. 2-15).

In Defendants' Answer, Affirmative Defenses, and Counterclaim, Defendants lodge claims of (1) breach of the franchise agreements; (2) breach of the assignment and assumption agreements; (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment; (5) violation of the New Jersey Franchise Practices Act; (6) violation of the Florida Franchise Act; (7) fraud; (8) fraudulent misrepresentation; (9) negligent misrepresentation; and, (10) wrongful eviction.  (DE 30, pgs. 26-33).  In the prayer for relief, Defendants request generally that the court enter a preliminary injunction to restore Defendants to the operation of the franchises.  (DE 30, pg. 33).

**Counts 2, 3, 4, 6, 7, 8, and 9**

In their Cross Motion for Preliminary Injunction, (DE 36), Defendants make no specific legal argument with regard to seven (7) of the counterclaims, namely: breach of the assignment and assumption agreements; breach of the covenant of good faith and fair dealing; unjust enrichment; violation of the Florida Franchise Act; fraud; fraudulent misrepresentation; and, negligent misrepresentation.  (DE 36, pgs. 1-15).

Because Defendants have not provided any legal discussion with regard to the elements

of those claims, this Court is unable to conclude that Defendants have " . . . clearly established the 'burden of persuasion' as to all four elements" with regard to such claims.  *See Siegel*, 234 F.3d at 1176.  This Court therefore **RECOMMENDS** that the District Court **DENY** Defendants' Cross Motion for Preliminary Injunction with regard to such claims.  (DE 36).

## Counts 1, 5, and 10

Although Defendants do argue more specifically in support of their claims for breach of the franchise agreements, violation of the New Jersey Franchise Practices Act, and wrongful eviction, this Court nevertheless concludes that Defendants still fail to make the required showing of substantial likelihood of success on the merits as to each of those claims.

### Breach of the Franchise Agreements

With regard to their claim for breach of the franchise agreements, Defendants state various reasons why Plaintiff improperly terminated the franchise agreements.  (DE 36, pgs. 3-6).  However, to the extent that such factual contentions could be construed as a claim for breach of contract, Defendants have failed to discuss the elements for a claim of breach of contract, failed to show how they have met such elements, and failed to discuss how Plaintiff's breach of contract entitles Defendants to injunctive relief herein.[6]  Accordingly, this Court is unable to conclude that Defendants have shown a substantial likelihood of success on the merits with regard to such claim.  As such, this Court **RECOMMENDS** that the District Court **DENY** Defendants' Cross Motion for Preliminary Injunction with respect to such claim.  (DE 36).

 *See Siegel*, 234 F.3d at 1176 (noting that a preliminary injunction should not be granted unless the movant clearly establishes the 'burden of persuasion' as to all four elements.")

---

[6] *See* note 5, *infra*.

17

**Violation of the New Jersey Franchise Practices Act**

With regard to their claim for violation of the New Jersey Franchise Practices Act, (DE 36, pgs. 6-10), although Defendants contend that the parties designated New Jersey law in their franchise agreements, and although Defendants invoke a New Jersey franchise statute which permits the entry of injunctive relief "where appropriate,"[7] it appears that Defendants' reliance on New Jersey law is misplaced for two reasons.

First, the franchise agreements provided that the agreements were to be governed by "the law of the state in which The Learning Experience's principal place of business is located at the time of default . . ."  (DE 9, exh. 1, ¶ 12.4; DE 9, exh. 5, ¶ 12.4).  In his affidavit, Weissman states that Plaintiff TLE Systems' principal place of business is located in Boca Raton, Florida, and Plaintiff maintains that Boca Raton was Plaintiff's principal place of business at the time of Defendants' alleged default.  (DE 40, pg. 4).  It should be noted that Plaintiff's April 2, 2010, notice of default lists Plaintiff's business address as Boca Raton, Florida.  (DE 9, exh. 7).  As such, it would appear that Florida law, not New Jersey law, would apply herein.

Second, even if Plaintiff's principal place of business were located in New Jersey, Defendants have made no showing that the jurisdictional requirements of the New Jersey Franchise Practices Act have been met herein.  *See Emergency Accessories & Installation, Inc. v. Whelen Eng'g Co., Inc.*, Civil Action No. 09-2652 (JEI/AMD), 2009 WL 1587888, *3 (D.N.J. June 3, 2009) (providing 3 part test for when a franchise exists for purposes of New Jersey's Franchise Practices Act).  Moreover, even if Defendants attempted to make such a showing, the

---

[7] *See* N.J. Stat. Ann. § 56:10-10 (2009) ("Any franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief.")

fact that the child care centers were being operated in Massachusetts would appear to defeat application of the New Jersey Franchise Practices Act.  (DE 9, ¶¶ 13, 20).  *See Emergency Accessories & Installation, Inc.*, 2009 WL 1587888 at *3 (noting that a franchise exists under the Franchise Practices Act if, *inter alia*, "the parties contemplated that the franchisee would maintain a 'place of business' in New Jersey.")

In light of the foregoing, this Court concludes that Defendants have failed to show a substantial likelihood of success on the merits as to its claim for violation of the New Jersey Franchise Practices Act.  Accordingly, this Court **RECOMMENDS** that the District Court **DENY** Defendants' Cross Motion for Preliminary Injunction as to such claim.  (DE 36).  *See Siegel*, 234 F.3d at 1176.

### Unlawful Eviction

Finally, with regard to their claim for unlawful eviction, Defendants argue that Plaintiff's violation of several Massachusetts statutes governing the eviction of tenants requires that the LLCs be restored to ownership and control of the facilities.  (DE 36, pgs. 9, 10).  However, Defendants fail to show how Massachusetts law applies herein.  Moreover, this Court has previously concluded that Florida law would appear to apply herein, pursuant to the terms of the franchise agreements.  (DE 9, exh. 1, ¶ 12.4; DE 9, exh. 5, ¶ 12.4).  Nevertheless, even assuming *arguendo* that Defendants had shown that Massachusetts law would apply herein, Defendants also fail to legally support their assertion that the Massachusetts statutes entitle them to any injunctive relief.

In light of the foregoing, this Court is unable to conclude that Defendants have shown a substantial likelihood of success on the merits as to its claim for unlawful eviction.  As such, this

19

Court **RECOMMENDS** that the District Court **DENY** Defendants' Cross Motion for

Preliminary Injunction as to such claim.  (DE 36).  *See Siegel*, 234 F.3d at 1176.

**Whether the Threatened Injury Outweighs Whatever Damage the Injunction May Cause**

      Because Defendants have failed to make the required showing as to the likelihood of

success on the merits, this Court need not consider the remaining required elements.  *See*

*Johnson & Johnson Vision Care,* Inc., 299 F.3d at 1247 (*citation omitted*).

      Nevertheless, this Court is compelled to note that had Defendants made the required

showing of substantial likelihood of success on the merits, Defendants would still have failed to

make a showing as to the third element required for the entry of a preliminary injunction, that the

threatened injury outweighs whatever damage an injunction would cause to Plaintiff.  *See*

*Palmer*, 287 F.3d at 1329.  At the evidentiary hearing, Defendant Mehta testified that he is

currently in bankruptcy proceedings, and that the only income that had been used to support the

operations of the child care centers came from his own personal business as a financial consultant

because the centers were not generating enough income from student enrollment.  When Mehta

was asked how he would financially support the operation of the child care centers if he were

restored to possession and operation, he testified that he would continue to use funds from his

personal financial consulting business.  This Court concludes that such testimony shows that

there is little realistic possibility that Defendants would be able to successfully operate the child

care centers if Defendants were granted the relief they request.  As such, granting Defendants the

relief they seek could ultimately prove more harmful to Plaintiff, in that the cycle of events which

serve as the basis for the instant litigation might only reoccur.  Because Defendants have failed to

show that the threatened injury outweighs whatever damage the injunction may cause to Plaintiff,

this Court **RECOMMENDS** that the District Court **DENY** Defendants' Cross Motion for Preliminary Injunction.  *See Siegel*, 234 F.3d at 1176.

## RECOMMENDATION TO THE DISTRICT COURT

In conclusion, **IT IS HEREBY RECOMMENDED** that the District Court **DENY** Plaintiff's Amended Motion for Preliminary Injunction, and **DENY** Defendants' Cross Motion for Preliminary Injunction.  (DEs 8, 36).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, Senior United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1) (2009) (providing that "within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.")  *See also* Fed. R. Civ. P. 72(b) (2009) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy.")  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S.

958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

   **DONE and SUBMITTED** in Chambers this 19 day of August, 2010, at West Palm

Beach in the Southern District of Florida.

_____

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE


Copies to:
The Hon. Daniel T. K. Hurley, Senior United States District Court Judge for the Southern
District of Florida
Counsel of Record